1  Anne Hadreas, SBN 253377
   Aaron Fischer, SBN 247391
2  DISABILITY RIGHTS CALIFORNIA
   1330 Broadway, Suite 500
3  Oakland, CA  94612
   Telephone : (510) 267-1200
4  Facsimile :  (510) 267-1201

5  Melinda Bird, SBN 102236
   DISABILITY RIGHTS CALIFORNIA
6  350 S. Bixel Street, Suite 290
   Los Angeles, CA  90017
7  Telephone ; (213) 213-8000
   Facsimile :  (213) 213-8001

8

9  Attorneys for Plaintiff

10
                        **UNITED STATES DISTRICT COURT**
11
                       **NORTHERN DISTRICT OF CALIFORNIA**
12
                               **SAN JOSE DIVISION**
13

14 | Disability Rights California, the California | **CASE NO.: 19-CV-01833-VKD** |
   | Protection and Advocacy Agency for | |
15 | Persons with Disabilities, | **NOTICE OF MOTION AND MOTION** |
   | | **FOR PRELIMINARY INJUNCTION,** |
16 | Plaintiff, | **MEMORANDUM OF POINTS AND** |
   | | **AUTHORITIES IN SUPPORT** |
17 | vs. | **THEREOF** |
18 | County of San Benito; San Benito County | Date:    May 14, 2019 |
   | Behavioral Health; and Alan Yamamoto, | Time:    10 a.m. |
19 | Director of San Benito County Behavioral | Dept:    2 |
   | Health, in his official capacity, | Judge:   Hon. Virginia DeMarchi |
20 | | |
   | Defendants. | Action Filed:  April 4, 2019 |
21

22

23

24

25

26

27

28

---

TO DEFENDANTS County of San Benito; San Benito County Behavioral Health; and Alan Yamamoto, Director of San Benito County Behavioral Health, in his official capacity, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on May 14, 2019 at 10 a.m. or as soon thereafter as counsel may be heard in Courtroom 2, United States District Court, Northern District of California, located on the 5th floor of the Robert F. Peckham United States Courthouse, 280 South 1st Street, Room 2112, San Jose, California, Plaintiff Disability Rights California will move the Court pursuant to Rule 65 of the Federal Rules of Civil Procedure and Rule 65-1 of the Civil Local Rules for a preliminary injunction.  Plaintiff requests an order enjoining Defendants and their successors, agents, officers, servants, employees, attorneys and representatives and all persons acting in concert or participating with them, from failing and refusing to provide access to witnesses and records that Plaintiff Disability Rights California requires to conduct an investigation of abuse and neglect of patients with mental illness, including the names and contact information of individuals held involuntarily by Defendants at Hazel Hawkins Hospital for more than twenty-four hours pursuant to Welf. & Inst. Code § 5150.  Plaintiff's authority and obligation to conduct this investigation and access these witnesses and records is based on the Protection and Advocacy for Individuals with Mental Illness Act, 42 U.S.C. §§ 10805(a)(1)(A) and 10805(a)(4).

The Motion is made on the ground that Plaintiff will suffer irreparable injury unless the activities described above are enjoined, and that the activities described above violate Plaintiff's rights under 42 U.S.C. §§ 10805(a)(1)(A), 10805(a)(4) and 42 U.S.C. § 1983.

This Motion is based on the motion and memorandum filed herein, the Complaint for Declaratory and Injunctive Relief, the declaration of Melinda Bird in Support of Plaintiff's Motion for Preliminary Injunction with exhibits, and Proposed Order.

1

## MEMORANDUM OF POINTS AND AUTHORITIES

### TABLE OF CONTENTS

INTRODUCTION ........................................................................... 6

STATEMENT OF FACTS ................................................................ 8

ARGUMENT ................................................................................ 11

I.   PLAINTIFF DRC IS ENTITLED TO A PRELIMINARY INJUNCTION............ 11

    A.   DRC Is Likely to Succeed on the Merits. .................................. 12

        1.   Defendants have Acknowledged DRC's Statutory Authority to Access Records and Witnesses............................................ 12

        2.   Defendants' Insistence on a Prior Court Order Will Frustrate the Purpose of PAIMI Act and Impair the Effectiveness of DRC's Investigation. .......................................................... 14

        3.   DRC Has Provided Ample Evidence to Defendants to Support its Probable Cause Finding. ........................................... 16

        4.   The Contact Information At Issue Here Is the Cornerstone of a P&A Investigation. ....................................................... 18

    B.   Plaintiff DRC Suffers Irreparable Injury and Will Continue to Do So Unless the Court Grants the Motion for Preliminary Injunction............ 20

    C.   The Balance of Hardships Favors DRC. .................................... 21

        1.   Defendants Will Suffer No Harm from An Injunction. ................... 21

        2.   DRC's Abuse Investigation will be Frustrated in the Absence of an Injunction............................................................... 22

    D.   The Public Interest Will be Advanced by the Grant of Preliminary Relief.23

II.   PLAINTIFF SHOULD NOT BE REQUIRED TO POST BOND. .......................... 23

CONCLUSION ............................................................................. 24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Advocacy Ctr. v. Stalder*,
　128 F. Supp. 2d 358 (M.D. La. 1999) ............................................................. *passim*

*Alabama Disabilities Advocacy Program v. J.S. Tarwater Developmental
　Ctr.*, 894 F. Supp. 424 (M.D. Ala. 1995), *aff'd,* 97 F.3d 492 (11th Cir.
　1996)............................................................................. 12, 13, 21, 22

*Alabama Disabilities Advocacy Program v. SafetyNet Youthcare, Inc.*,
　65 F. Supp. 3d 1312 (S.D. Ala. 2014) ............................................. 11, 13, 18

*Alliance for the Wild Rockies v. Cottrell*,
　632 F.3d 1127 (9th Cir. 2011) ................................................................ 11

*Amoco Production Co. v. Village of Gambell*,
　480 U.S. 531, 542 (1987) ..................................................................... 21

*Arizona Center for Disability Law v. Allen*,
　197 F.R.D. 689 (D. Ariz. 2000) .............................................................. 16

*Center For Legal Advocacy v. Earnest*,
　188 F. Supp. 2d 1251 (D. Colo. 2002) ...................................................... 16

*Connecticut Office of Protection and Advocacy v. Hartford Bd. of Ed.*,
　355 F. Supp. 2d 649 (D. Conn. 2005) *aff'd,* 464 F.3d 229 (2nd Cir. 2006) ........... 11, 19

*Disability Law Ctr. of Alaska, Inc. v. Anchorage Sch. Dist.*,
　581 F.3d 936 (9th Cir. 2009) ............................................................... 19

*Matter of Disability Rights Idaho Req. for Ada County Coroner Records
　Relating to the Death of D.T.*,
　168 F. Supp. 3d 1282 (D. Idaho 2016) .................................................. 12, 16

*Disability Rights Ohio v. Buckeye Ranch, Inc.*,
　Civ. Nos. 2:18-CV-894, 2:18-CV-906, U.S.D.C., S.D. Ohio, 2019 WL
　1369400 (03/26/2019) .................................................................. 12, 24

*Disability Rights Pennsylvania v. School District of Philadelphia*,
　Civ. No. 17-4858, U.S.D.C., E.D. Pa., 2019 WL 1405844
　(Order filed 03/28/2019) ................................................................... 12

*Disability Rights Wisconsin, Inc. v. State of Wisconsin Dep't of Pub.
　Instruction*, 463 F.3d 719 (7th Cir. 2006) ...................................... 18, 19, 22

3

*Iowa Protection and Advocacy Services, Inc. v. Gerard Treatment Programs,*
    *L.L.C.*, 152 F. Supp. 2d 1150 (N.D. Iowa 2001).........................................11, 16, 20, 21

*Iowa Protection and Advocacy Services, Inc. v. Rasmussen*,
    206 F.R.D. 630 (S.D. Iowa 2002) ..........................................................................11, 20

*Maryland Disability Law Ctr., Inc. v. Mt. Washington Pediatric Hosp.*, Inc.,
    106 Md.App. 55, 664 A.2d 16, 24 (1995)........................................................................16

*Mississippi Protection and Advocacy System, Inc. v. Cotten*,
    929 F.2d 1054 (5th Cir. 1991)...................................................................15, 19, 22

*Office of Protection and Advocacy for Persons with Disabilities v.*
    *Armstrong*, 266 F. Supp. 2d 303 (D. Conn. 2003) ...............................................11, 16

*Ohio Legal Rights Service v. Buckeye Ranch, Inc.*,
    365 F. Supp. 2d 877 (S.D. Ohio 2005)..............................................................11, 17, 20

*Oklahoma Disability Law Center, Inc. v. Dillon Family and Youth Services,*
    *Inc.*, 879 F.Supp. 1110 (N.D. Okla 1995) .........................................................12, 16

*Pennsylvania Prot. & Advocacy, Inc. v. Houstoun*,
    228 F.3d 423 (3d Cir. 2000).........................................................................................23

*People of State of Cal. ex rel. Van De Kamp v. Tahoe Reg'l Planning*
    *Agency*, 766 F.2d 1319, 1325–26 (9th Cir.), amended, 775 F.2d 998
    (9th Cir. 1985) ...........................................................................................................24

*Protection and Advocacy System, Inc. v. Freudenthal*,
    412 F.Supp. 2d 1211 (D. Wy. 2006) .........................................................................19, 22

*Robbins v. Budke*,
    739 F.Supp. 1479 (D.N.M. 1990) .................................................................................12

*Virginia Office for Prot. & Advocacy v. Reinhard*,
    405 F.3d 185 (4th Cir. 2005)......................................................................................19

*Winter v. Natural Resources Defense Council, Inc.*,
    555 U.S. 7 (2008) ....................................................................................................11, 21

*Wisconsin Coalition for Advocacy, Inc. v. Czaplewski*,
    131 F. Supp. 2d 1039 (E.D. Wis. 2001) .........................................................12, 20, 21

**Statutes**

28 U.S.C. § 1446....................................................................................................................11

29 U.S.C. § 794e (Protection and Advocacy of Individual Rights Act
    ("PAIR")) .............................................................................................................12

4

42 U.S.C. § 1320d to d–8 ........................................................................... 19

42 U.S.C. § 1396r(c)(1)(A)(ii) ................................................................... 23

42 U.S.C. § 10801 ....................................................................................... 23

42 U.S.C. §§ 10801–10851 ........................................................ 12, 13, 14, 23

42 U.S.C. § 10805(a)(1)(A) ........................................................................ 13

42 U.S.C. § 10805(a)(1)(B) ........................................................................ 13

42 U.S.C. § 10805(a)(4) .............................................................................. 13

42 U.S.C. § 10806(a) ............................................................................. 13, 22

42 U.S.C. §§ 15001–15115 ......................................................................... 12

42 U.S.C. § 15043(a)(1) .............................................................................. 13

Cal. Welf. & Inst. Code § 4903(e)(1) ........................................................... 9

Cal. Welf. & Inst. Code § 5150 ........................................................... *passim*

Cal. Welf. & Inst. Code § 5325.1(c) ........................................................... 23

**Regulations**

42 C.F.R. § 51.2 .......................................................................................... 17

42 C.F. R. § 51.42(b) ............................................................................. 13, 14

42 C.F.R. § 51.42(b)(1) ............................................................................... 14

42 C.F.R. § 51.42(b)(2) ............................................................................... 14

**Other Authorities**

11A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal*
    *Practice and Procedure* § 2948.4 ...................................................... 23

*DRC v. COUNTY OF SAN BENITO*; Case No. 19-cv-01833 VKD
MEMO OF POINTS & AUTHORITIES ISO MOT. RE: PRELIM. INJUNCTION

1

**INTRODUCTION**

2   Plaintiff Disability Rights California (DRC) has begun an investigation, consistent

3   with its statutory authority and mandate, into the probable abuse and neglect of psychiatric

4   patients by Defendants San Benito County (the "County") and San Benito County

5   Behavioral Health, the County mental health agency.  DRC has reports from multiple,

6   credible sources that the County holds people who are in psychiatric crisis involuntarily,

7   for days at a time, in the emergency room of a medical facility – Hazel Hawkins Hospital –

8   where they receive no mental health treatment and are isolated in small windowless rooms

9   in what is effectively solitary confinement.  These patients are also denied their legally

10   required due process rights during this time.  This practice results in irreparable injury to

11   the patients and violates clear protections in state law mandating treatment for psychiatric

12   patients who are held involuntarily under Cal. Welf. and Inst. Code § 5150.

13   Plaintiff DRC is the Protection and Advocacy (P&A) system for the State of

14   California, with unique authority under federal law to investigate incidents of abuse and

15   neglect directed at individuals with mental illness. 42 U.S.C §§ 10805(a)(1)(A),

16   10805(a)(4).  These statutory provisions allow DRC to obtain access to potential victims

17   and witnesses through requests for information and records to agencies that provide

18   services to people with disabilities, such as County Defendants.  Plaintiff DRC has

19   determined that psychiatric patients who have been held in the emergency room at Hazel

20   Hawkins Hospital for 24 hours or more are likely subjected to abuse and neglect.  DRC

21   requested the names and contact information of these individuals so that DRC attorneys

22   may interview them, review their records and seek further relief for them if and as

23   appropriate.  The County Defendants have refused to provide access to these witnesses;

24   this refusal prevents DRC's investigation from moving forward.

25   DRC's investigation in this matter is routine in the work that it does every day.

26   DRC conducts such investigations across the State of California, utilizing its statutory

27   access authority to obtain confidential, non-public information and records from public and

28   private entities as necessary to complete its investigations and to protect and advocate for

1  the rights of people with disabilities.  As required by federal statute, DRC holds the

2  information it obtains in the strictest confidence. There is nothing extraordinary or unusual

3  about the information requests at issue here.  The only thing that makes this investigation

4  unusual is that Defendants have refused to provide information essential to DRC's

5  investigation, thus precipitating this motion for relief from the federal court.

6  Plaintiff DRC seeks a preliminary injunction to compel the County Defendants to

7  produce the requested information and access to witnesses.  The obstruction of DRC's

8  ability to conduct an investigation into this urgent problem has caused irreparable injury,

9  and additional delays mean that potential witnesses will be more difficult to locate and

10  reports will grow stale, further impeding the investigation.  Current and future County

11  patients whom DRC is mandated to serve will continue to be held without treatment or due

12  process, much to their detriment.  In recent weeks, DRC received yet another report that

13  the County has held a patient involuntarily without mental health treatment for multiple

14  days at Hazel Hawkins Hospital.  DRC, and its constituents, have suffered and continue to

15  suffer irreparable injury absent an immediate order from this Court.

16  Defendants have not disputed the underlying allegations that DRC is investigating.

17  Defendants also acknowledge that, as California's P&A system, Plaintiff DRC has a

18  statutory right to access witnesses and review records.  However, Defendants insist on a

19  prior court order before they will produce the requested names and contact information.

20  As Plaintiff DRC discusses below, federal courts have found that such a requirement will

21  frustrate the mission of the P&A system and render it "ineffective."  *Advocacy Ctr. v.*

22  *Stalder*, 128 F. Supp. 2d 358, 368 (M.D. La. 1999). DRC conducts many investigations

23  each year; to obtain a prior court order each time would significantly impair its work now

24  and in the future.  Plaintiff DRC meets all the requirements for a preliminary injunction.

25  ///

26  ///

27  ///

28

7

1

**STATEMENT OF FACTS**

2        As part of DRC's regular monitoring and advocacy work on behalf of people with

3  psychiatric and other disabilities, DRC received reports that people in mental health crisis

4  who are detained under Cal. Welf. & Inst. Code § 5150 in San Benito County are taken to

5  Hazel Hawkins Hospital in Hollister, where they are held for days with no mental health

6  treatment.  In August 2018, DRC staff conducted a monitoring visit of Hazel Hawkins

7  Hospital and confirmed that extended involuntary detentions in the hospital, without

8  appropriate treatment or the provision of due process, are a pervasive problem.

9  Declaration of Melinda Bird, ¶ 6.

10        On December 3, 2018, DRC informed Defendants that it had begun an investigation

11  into the mistreatment, over-detention, and denial of due process rights among people with

12  mental health disabilities served by the San Benito County Behavioral Health ("SBCBH")

13  agency.  Exhibit A to Bird Decl.  In the letter, DRC states its finding that there is probable

14  cause that abuse and/or neglect has or may have occurred with respect to people with

15  mental health disabilities served by SBCBH, as those terms are defined in DRC's

16  authorizing statutes and regulations.  *Id.*  DRC's letter sets forth several bases underlying

17  this finding, including: the denial of timely access to inpatient care among people detained

18  on a Section 5150 hold; the denial of appropriate mental health care during the period of

19  involuntary detention, including the use of seclusion; and the denial of due process rights,

20  including as to the rights to contest one's continued involuntary detention and to receive

21  the services of a patients' rights advocate. *Id.*

22        Significantly, DRC is not the only entity that has identified these very serious issues

23  of mistreatment and violation of rights among people with psychiatric disabilities served

24  by SBCBH.  In 2016, the San Benito County Grand Jury issued a report, entitled

25  *Psychiatric Hold and Treatment, Public Mental Healthcare Management, San Benito*

26  *County*.  Ex. F to Bird Decl.  The Grand Jury Report found that "San Benito County has a

27  complex problem with sound administration and management of mental health care for

28  people placed on a '5150' holds."  *Id.* at 83. The report found that the system to be

*DRC v. COUNTY OF SAN BENITO*; Case No. 19-cv-01833 VKD
MEMO OF POINTS & AUTHORITIES ISO MOT. RE: PRELIM. INJUNCTION

1  "objectionable" and "dangerous." *Id.* at 84.  The report describes frequent delays for

2  individuals to receive care, as well as serious violations of state law.  The Report states that

3  individuals are "not infrequently" held for more than a week and on at least one occasion

4  for 14 days.  *Id.* at 109.  The Report also describes how people detained on Section 5150

5  holds receive no mental health treatment while SBCBH has them held at Hazel Hawkins

6  Hospital, leaving them "languishing" in the emergency room.  *Id.* at 95, 97.

7          Based on DRC's finding of probable cause regarding the abuse and/or neglect of

8  people with disabilities, DRC exercised its statutory access authority to request policies

9  and information regarding potential victims and witnesses, including the names and

10  contact information of people held involuntarily on Section 5150 holds, in order to

11  continue the investigation.  Although DRC's statutory access authority directs that it shall

12  have access to such records and information "not later than three business days after the

13  agency makes a written request," Cal. Welf. & Inst. Code § 4903(e)(1), DRC requested

14  that such material be provided within one week – *i.e.*, December 10, 2018.  Bird Decl. ¶ 9

15  & Ex. A.

16          The County has requested repeated extensions of time to respond to DRC's requests

17  for records and information.  In an effort to proceed cooperatively, DRC granted these

18  requests, including on December 10, January 15 and January 23, 2019.  DRC also provided

19  the County with additional authority for its request for the names of Section 5150-detained

20  patients and their contact information.  The primary purpose of this correspondence was to

21  facilitate a resolution without need for federal litigation.  Bird Decl. ¶ 15 & Exhibits B, C,

22  & D.

23          On February 27, 2019, counsel for the County notified DRC that it would provide

24  only a portion of the information requested pursuant to DRC's access authority.  After

25  significant delay, Defendants agreed to provide the names of and information for patients

26  held at Hazel Hawkins Hospital on consecutive, "serial" psychiatric holds under Welf. &

27  Inst. Code § 5150. Bird Decl., ¶ 13.  But the County refused to provide DRC with names

28  and contact information of individuals held at Hazel Hawkins Hospital on § 5150 holds for

1   more than 24 hours, as requested, stating that DRC had not "presented sufficient evidence,

2   nor authority, to obtain this information." *Id.*

3       Continuing with its good faith effort to resolve this matter without the need for

4   litigation, DRC continued to communicate with counsel for the County in an attempt to

5   resolve this dispute.  DRC reiterated the basis for its probable cause finding, explaining

6   that this finding was not limited to patients held on "serial" 5150 holds. Bird Decl., ¶ 14 &

7   Ex. D (letter dated March 4, 2019).  DRC explained that it had obtained redacted data

8   showing that "at least 32 individuals on 5150 holds in 2018 were held at Hazel Hawkins

9   Hospital for more than 24 hours." *Id.*  DRC's March 4 letter also informed Defendants that

10  DRC had received a new complaint during the week of February 25, 2019 regarding a

11  patient who was held on a §5150 hold at Hazel Hawkins Hospital for 40 hours. *Id.*  On

12  March 4 and March 20, DRC also granted additional extensions of time for the County to

13  respond.  Bird Decl, ¶ 15.

14      On April 3, 2019, counsel for the County informed DRC that it would only produce

15  the names and contact information of people held at Hazel Hawkins Hospital on § 5150

16  holds for more than 24 hours pursuant to a court order. Bird Decl., ¶ 16.  Based on the

17  County's refusal, DRC informed counsel that same day that DRC would file this action in

18  federal court.  To date, the County has not provided the patient names and contact

19  information DRC has requested. Bird Decl. ¶ 18.

20      Also on April 3, counsel for the County stated that the County would be filing a

21  case against DRC for declaratory relief in state court, which it did the same day.

22  Complaint in *County of San Benito v. Disability Rights California*, Case No. CU-19-0060,

23  Exhibit E to Bird Decl. The County's state court complaint seeks "a judicial determination

24  of [the County's] duty to disclose confidential patient information." *Id.*

25      The County's state court action appears to be an attempt to avoid a federal forum

26  for the resolution of this issue of federal law.  The state court complaint acknowledges, as

27  it must, that DRC has requested information "pursuant to federal law as the protection and

28  advocacy agency for the State of California," and that "[u]nder federal law, the protection

*DRC v. COUNTY OF SAN BENITO*; Case No. 19-cv-01833 VKD
MEMO OF POINTS & AUTHORITIES ISO MOT. RE: PRELIM. INJUNCTION

1  and advocacy agencies must have authority to investigate incidents of abuse and neglect."

2  State court complaint, ¶¶ 3, 4.  Plaintiff intends to file a notice of removal of the state court

3  matter to this Court as a question arising under federal law under 28 U.S.C. § 1446.

4  <u>**ARGUMENT**</u>

5  **I.   PLAINTIFF DRC IS ENTITLED TO A PRELIMINARY INJUNCTION.**

6        A court may issue a preliminary injunction upon a clear showing that the plaintiff is

7  entitled to the requested relief.  *Winter v. Natural Resources Defense Council, Inc.,* 555

8  U.S. 7, 22 (2008).  To make this showing, the plaintiff must establish: (1) a likelihood of

9  success on the merits; (2) a likelihood of irreparable harm to the moving party in the

10 absence of preliminary relief; (3) that the balance of equities tips in favor of the moving

11 party; and (4) that an injunction is in the public interest.  *Id.*  The court may apply a sliding

12 scale test, under which "the elements of the preliminary injunction test are balanced, so

13 that a stronger showing of one element may offset a weaker showing of another." *Alliance*

14 *for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1131 (9th Cir. 2011).  In this case, DRC

15 satisfies each element of the four-part test.  DRC is likely to succeed and will be

16 irreparably harmed if relief is not granted.  The balance of hardships tips in DRC's favor,

17 and a preliminary injunction will advance the public interest.

18       Other federal district courts have weighed these factors in similar cases brought by

19 other P&A systems and issued injunctions upholding the rights of a P&A system to access

20 records, victims and witnesses; published cases stretch back more than 20 years. *See,*

21 *Alabama Disabilities Advocacy Program v. SafetyNet Youthcare, Inc*., 65 F. Supp. 3d

22 1312, 1326 (S.D. Ala. 2014); *Connecticut Office of Protection and Advocacy v. Hartford*

23 *Bd. of Ed*., 355 F. Supp. 2d 649, 653 (D. Conn. 2005) *aff'd*, 464 F.3d 229 (2nd Cir. 2006*);*

24 *Ohio Legal Rights Service v. Buckeye Ranch, Inc*., 365 F. Supp. 2d 877, 893 (S.D. Ohio

25 2005); *Office of Protection and Advocacy for Persons with Disabilities v. Armstrong*, 266

26 F. Supp. 2d 303, 322 (D. Conn. 2003); *Iowa Protection and Advocacy Services, Inc. v.*

27 *Rasmussen*, 206 F.R.D. 630, 635, 643 (S.D. Iowa 2002); *Iowa Protection and Advocacy*

28 *Services, Inc. v. Gerard Treatment Programs, L.L.C.*, 152 F. Supp. 2d 1150, 1157, 1178

11

1  (N.D. Iowa 2001); *Wisconsin Coalition for Advocacy, Inc. v. Czaplewski*, 131 F. Supp. 2d

2  1039, 1044, 1052 (E.D. Wis. 2001); *Advocacy Ctr. v. Stalder*, 128 F. Supp. 2d 358, 367-

3  368 (M.D. La. 1999); *Oklahoma Disability Law Center, Inc. v. Dillon Family and Youth*

4  *Services, Inc.,* 879 F.Supp. 1110, 1112 (N.D. Okla. 1995); *Alabama Disabilities Advocacy*

5  *Program v. J.S. Tarwater Developmental Ctr.,* 894 F. Supp. 424, 429 (M.D. Ala. 1995),

6  *aff'd,* 97 F.3d 492 (11th Cir. 1996); *Robbins v. Budke*, 739 F.Supp. 1479, 1488 (D.N.M.

7  1990).

8      Within the past two weeks alone, federal district courts in Ohio and Pennsylvania

9  issued new orders upholding the rights of state P&A systems to access records and

10  witnesses.  One court granted a preliminary injunction in favor of the P&A.  *Disability*

11  *Rights Ohio v. Buckeye Ranch, Inc.,* Civ. Nos. 2:18-CV-894, 2:18-CV-906, 2019 WL

12  1369400 (S.D. Ohio, Mar. 26, 2019).  A second court granted summary judgement in favor

13  of the P&A.  *Disability Rights Pennsylvania v. School District of Philadelphia,* Civ. No.

14  17-4858, 2019 WL 1405844 (E.D. Pa., Mar. 28, 2019).

15      **A.**     **DRC Is Likely to Succeed on the Merits.**

16          **1.**     **Defendants have Acknowledged DRC's Statutory Authority to**

17                  **Access Records and Witnesses.**

18      The Protection and Advocacy for Individuals with Mental Illness ("PAIMI") Act,

19  42 U.S.C. §§ 10801–10851, the Developmental Disabilities Assistance and Bill of Rights

20  Act of 2000 ("PADD"), 42 U.S.C. §§ 15001–15115, and the Protection and Advocacy of

21  Individual Rights Act ("PAIR"), 29 U.S.C. § 794e (collectively, the "P&A Acts")

22  authorize a protection and advocacy system ("P&A system") to "monitor the care of and

23  advocate on behalf of individuals with mental illness and developmental or other

24  disabilities."  *Connecticut Off. of Protec. and Advoc. v. Hartford Bd. of Educ.,* 464 F.3d

25  229, 233 (2d Cir. 2006).  "To further these objectives, the P&A system 'has extensive

26  authority to access individuals, patient records, and public and private facilities.'"  *Matter*

27  *of Disability Rights Idaho Req. for Ada County Coroner Records Relating to the Death of*

28  *D.T.* 168 F. Supp. 3d 1282, 1286 (D. Idaho 2016) (*quoting* 42 U.S.C. 10805(a)).

1    Under this statutory scheme, each state must designate a P&A system. 42 U.S.C.

2  § 15043(a)(1)).  The Governor of California designated Protection and Advocacy, Inc. as

3  the state's P&A system in 1978; the organization was later renamed Disability Rights

4  California. Bird Decl., ¶ 2.  DRC is a non-profit corporation incorporated in the state of

5  California with a board of directors and offices throughout the state. *Id.*

6    This case concerns the PAIMI Act, 42 U.S.C. § 10801 *et seq.*  Under the PAIMI

7  Act, DRC has the authority to "investigate incidents of abuse and neglect of individuals

8  with mental illness if the incidents are reported to the system or if there is probable cause

9  to believe that the incidents occurred" and "pursue legal, administrative, and other

10  appropriate remedies or approaches to ensure the protection of individuals with mental

11  illness who are receiving care and treatment in the State." 42 U.S.C. § 10805(a)(1)(A) &

12  (B).  Under 42 U.S.C. §§ 10805(a)(4), "P&A access to the records of individuals with

13  mental illness or disabilities is also authorized; and, in certain situations, a P&A may

14  access records without consent of either the individual or her legal guardian." *Alabama*

15  *Disabilities Advocacy Program v. SafetyNet Youthcare, Inc*., 65 F. Supp. 3d 1312, 1318

16  (S.D. Ala. 2014).

17    "It is clear that [PAIMI] provides express authority for P&As to gain broad access

18  to records, facilities, and residents to ensure that [PAIMI's] mandates can be effectively

19  pursued."  *Alabama Disabilities Advocacy Program v. J.S. Tarwater Developmental Ctr.,*

20  97 F.3d 492, 497 (11th Cir. 1996). The PAIMI Act also requires P&A programs to

21  maintain the confidentiality of records it obtains from a health care provider "to the same

22  extent as is required of the provider of such services." 42 U.S.C. § 10806(a).

23    The regulations implementing the PAIMI Act specifically address the authority of a

24  P&A system to access witnesses and records "to conduct a full investigation of an incident

25  of abuse or neglect." 42 C.F. R. § 51.42(b).

26  ///

27    This authority shall include the opportunity to interview *any facility service
    recipient*, employee, or *other persons, including the person thought to be the
28    victim of such abuse, who might be reasonably believed by the system to*

13

*have knowledge of the incident under investigation*. Such access shall be afforded, upon request by the P&A system when:

> (1) An incident is reported or a complaint is made to the P&A system;
> (2) The P&A system determines there is probable cause to believe that an incident has or may have occurred; or
> (3) The P&A system determines that there is or may be imminent danger of serious abuse or neglect of an individual with mental illness.

*Id.* (emphasis added).

In the present case, DRC's request for access to witnesses and/or victims is based on both 42 C.F.R. § 51.42(b)(1) and (b)(2). DRC received reports and complaints, **and** DRC determined that there is probable cause to believe that incidents of abuse and/or neglect have occurred. DRC determined that patients held on 5150 holds for more than a day at Hazel Hawkins Hospital were highly likely to be denied mental health treatment, and requested their names and contact information in order to interview them as part of its investigation and also offer them further assistance.

The County Defendant has stated that it "recognizes DRC's mission, as well as DRC's statutory duty to protect confidential information received." Ex. E to Bird Decl. (State court complaint, ¶ 22). However, the County still refuses to comply with DRC's request for the names of and contact information for the psychiatric patients held for more than a day at Hazel Hawkins Hospital, instead insisting on a prior court order. Similar restrictions on P&A access have been proposed by other defendants in other cases without success, as discussed below.

## 2. Defendants' Insistence on a Prior Court Order Will Frustrate the Purpose of PAIMI Act and Impair the Effectiveness of DRC's Investigation.

Defendant County has represented that it "does not object to the production [of the requested names of witnesses] subject to Court order." Ex. E to Bird Decl. (State court complaint, ¶ 21). Similar requirements for a prior court order have been considered and rejected by other federal courts and should be rejected here. In 1999, for example, the Louisiana P&A system was granted a TRO and then a permanent injunction when a state

*DRC v. COUNTY OF SAN BENITO*; Case No. 19-cv-01833 VKD
MEMO OF POINTS & AUTHORITIES ISO MOT. RE: PRELIM. INJUNCTION

1   agency "refused to grant the Advocacy Center's access to these records without a court

2   order." *Advocacy Ctr. v. Stalder*, 128 F. Supp. 2d 358, 368 (M.D. La. 1999).

3       The PAIMI Act requires that state agencies . . . provide ready access to an
        institution's psychiatric records to ensure that the Act's mandate can be
4       effectively pursued. [Citation omitted.] . . . [F]orcing the Advocacy Center to
        obtain a court order every time it seeks to investigate, would, in effect,
5       impede its ability to investigate a claim. [Citation omitted.] The PAIMI Act
        requires "an 'effective' system of advocacy." [Citation omitted.] The
6       authority to investigate would mean nothing and advocacy in the form of
        investigation would be ineffective if federal law would not preempt the
7       Department's policy.

8

9   *Id.* at 367, citing *Oklahoma Disability Law Center, Inc. v. Dillon Family and Youth*

10  *Services, Inc.*, 879 F.Supp. at 1112 ("The timely access guaranteed by the Act should not

11  be stripped of all meaning by requiring advocacy hearings to survive an application for a

12  court order.").

13      DRC regularly conducts investigations across the State of California, utilizing its

14  statutory access authority to obtain confidential, non-public information and records from

15  public and private entities as necessary to complete its investigation and to protect and

16  advocate for the rights of disabilities. Bird Decl., ¶ 23.  In the last three years alone, DRC

17  has issued probable cause findings of abuse and/or neglect regarding people with

18  disabilities in a variety of facilities and settings in San Diego, San Bernardino, Orange,

19  Kern, Sacramento, Sonoma, San Luis Obispo, and San Benito Counties. *Id.*  During that

20  period, San Benito County is the only county among this group that has insisted on

21  obtaining a prior court order or otherwise refused to provide requested information related

22  to an investigation in such a way as to require federal litigation. *Id.*  To obtain prior court

23  orders for each DRC investigation would significantly inhibit DRC's ability to carry out its

24  work and to respond promptly to complaints of abuse.  Bird Decl., ¶ 24.

25      Congress intended P&A systems such as DRC to be "effective." *Mississippi*

26  *Protection and Advocacy System, Inc. v. Cotten*, 929 F.2d 1054, 1058-59 (5th Cir. 1991).

27  Requiring DRC to court order to access records and witnesses is contrary to this intent.

28  / / /

---

15

1    **3.    DRC Has Provided Ample Evidence to Defendants to Support its**

2    **Probable Cause Finding.**

3    "It is well-settled that a protection and advocacy system is the 'final arbiter of

4    probable cause for the purpose of triggering its authority to access all records for an

5    individual that may have been subject to abuse or neglect.'" *Arizona Center for Disability*

6    *Law v. Allen,* 197 F.R.D. 689, 693 (D. Ariz. 2000). *Accord, Armstrong,* 266 F. Supp. 2d at

7    321; *Center For Legal Advocacy v. Earnest*, 188 F. Supp. 2d 1251, 1257 (D. Colo. 2002);

8    *Gerard Treatment Programs*, L.L.C., 152 F. Supp. 2d at 1157.

9    Further, "[c]ases interpreting PAIMI have repeatedly held that a P&A's probable

10   cause determination does not require judicial review." *Matter of Disability Rights Idaho*

11   *Request for Ada County Coroner Records*, 168 F. Supp. 3d at 1298 (citing cases). *See*

12   *also, Armstrong*, 266 F. Supp. 2d at 311 ("[C]ourts have rejected attempts to require

13   judicial review of the P&A's probable cause determination") (citations omitted);

14   *Oklahoma Disability Law Center, Inc. v. Dillon Family and Youth Services, Inc*., 879

15   F.Supp. at 1112; *Maryland Disability Law Ctr., Inc. v. Mt. Washington Pediatric Hosp.*,

16   Inc., 106 Md.App. 55, 664 A.2d 16, 24 (1995) (requiring P&A to "convince the circuit

17   court that probable cause exists prior to having access to patients, personnel, and records is

18   burdensome and unnecessary").

19   Initially, it is important to note that after delaying for more than three months,

20   Defendants finally accepted that DRC's probable cause finding justified its request for

21   names of and information for psychiatric patients held at Hazel Hawkins Hospital on

22   sequential, "serial" holds under Welf. & Inst. Code § 5150.  Defendants released the

23   requested names and contact information for six patients in this category on February 27,

24   2019. Bird Decl., ¶ 13.

25   However, Defendants still refuse to comply with DRC's request for the names of

26   and contact information for patients held at Hazel Hawkins Hospital for 24 hours or more.

27   DRC's investigation has revealed that more than 30 people likely fall into this category.

28   *Id.,* ¶ 14.  Defendants apparently contend that DRC's determination of probable cause is

16

1  limited to patients on consecutive, "serial" 5150 holds and excludes this broader group of

2  patients.

3       Defendants are incorrect.  DRC provided the County with ample evidence to

4  support its probable cause determination; this evidence would justify an even broader

5  request for records than is before the Court today.  DRC has received multiple, credible

6  complaints regarding the denial of treatment to *all* patients held in Hazel Hawkins Hospital

7  on a 5150 hold, regardless of duration.  These reports have continued to come in to DRC's

8  offices as recently as late February, 2019.  DRC reported credible complaints that Hazel

9  Hawkins had no capacity to provide mental health treatment to these psychiatric patients,

10  that hospital staff were not able even to continue or provide appropriate psychotropic

11  medication, and that the patients were held in isolation in a bare windowless room in the

12  emergency room.  These findings are clearly set forth in DRC's findings letter to

13  Defendants, and they are largely consistent with findings by the County's grand jury. Ex. F

14  to Bird Decl.  Most notably, <u>Defendants have never denied or disputed these factual</u>

15  <u>findings</u>.

16       Additionally, DRC is permitted to rely on reasonable inferences that follow from

17  the complaints received and the on-site inspection at Hazel Hawkins Hospital. The PAIMI

18  regulation defining probable cause determinations states:

19
20       Probable cause means reasonable grounds for belief that an individual with
         mental illness has been, or may be at significant risk of being subject to
21       abuse or neglect. The individual making such determination may base the
         decision on reasonable inferences drawn from his or her experience or
22       training regarding similar incidents, conditions or problems that are usually
         associated with abuse or neglect.
23

24  42 C.F.R. § 51.2.

25       DRC recognizes that it has an obligation to communicate to Defendants the basis

26  for its probable cause finding, and did so here. *Compare, Ohio Legal Rights Service v.*

27  *Buckeye Ranch, Inc.,* 365 F. Supp. 2d 877, 887 (S.D. Ohio 2005) ("The Buckeye Ranch

28  cannot be faulted for refusing to produce the logs when it did not know [the P&A] had

17

*DRC v. COUNTY OF SAN BENITO*; Case No. 19-cv-01833 VKD
MEMO OF POINTS & AUTHORITIES ISO MOT. RE: PRELIM. INJUNCTION

1    probable cause to believe that incidents of abuse or neglect had occurred.")  Since DRC

2    carefully and repeatedly articulated the facts underlying its finding of probable cause,

3    Defendants have no legitimate excuse for their non-production of information relevant to

4    DRC's ongoing investigation.  Given the evidence cited by DRC in its letters and

5    Defendants' apparent concession regarding the conditions described, a request for the

6    names of the psychiatric patients held for more than 24 hours at Hazel Hawkins Hospital is

7    fully within the scope of DRC's probable cause determination.

8              **4.       The Contact Information At Issue Here Is the Cornerstone of a**

9                        **P&A Investigation.**

10            DRC's request for the names and contact information of certain county patients is a

11   central aspect of most P&A investigations. Bird Decl., ¶ 25.  DRC's standard practice is to

12   request names and contact information, interview the affected individuals.  If they want

13   further assistance, DRC attorneys determine whether they are able to consent, obtain

14   releases and then request records. *Id.*  In fact, DRC in many cases has a right of access,

15   with or without signed releases, to the records of individuals with disabilities who may

16   have been subject to abuse or neglect.  *See Alabama Disabilities Advoc. Program v.*

17   *SafetyNet Youthcare, Inc.*, 65 F. Supp. 3d at 1318 ("P & A access to the records of

18   individuals with mental illness or disabilities is also authorized; and, in certain situations, a

19   P & A may access records without consent of either the individual or her legal guardian.")

20   (citing 42 U.S.C. §§ 10805(a)(4)).

21            Courts have consistently granted access to directory information such as names and

22   contact information when required for P&A investigations.  For example, in *Disability*

23   *Rights Wisconsin, Inc. v. State* of *Wisconsin Dep't of Pub. Instruction*, 463 F.3d 719, 728

24   (7th Cir. 2006), a state education agency refused to produce the names of students held in a

25   seclusion room until the P&A obtained releases from their parents, citing privacy concerns.

26   The Court of Appeal upheld the P&A's access rights.

27            The point of the federal P&A statutes is to establish and equip a specialized
             agency to look out for individuals with mental illness.  Confounding the
28           [P&A] agency in the name of an illusory concern for privacy defeats that
             very important goal. Accordingly, we conclude that requiring [the P&A] to

*DRC v. COUNTY OF SAN BENITO*; Case No. 19-cv-01833 VKD
MEMO OF POINTS & AUTHORITIES ISO MOT. RE: PRELIM. INJUNCTION

> obtain authorization before it can learn the names of the children [the state agency] believes were placed in the seclusion room violates both the spirit and the letter of the federal P&A statutes.

*Id.* at 729-30; *accord, Disability Law Ctr. of Alaska, Inc. v. Anchorage Sch. Dist.,* 581 F.3d 936, 940 (9th Cir. 2009) (reversing denial of request for directory information); *Connecticut Office of Prot. & Advocacy v. Hartford Bd. of Educ.,* 355 F. Supp. 2d at 660 (granting access to directory information); *Virginia Office for Prot. & Advocacy v. Reinhard*, 405 F.3d 185, 187 (4th Cir. 2005) (same).

Defendants have also objected to disclosure of names and contact information based on the Health Insurance Portability and Accountability Act (HIPAA), 42 U.S.C. § 1320d to d–8. *See*, State court complaint, ¶ 14, Ex. E to Bird Decl.  A similar objection was addressed and rejected in *Protection and Advocacy System, Inc. v. Freudenthal*, 412 F.Supp. 2d 1211, 1218 (D. Wy. 2006). There, the court noted that the U.S. Department of Health and Human Services, which implements HIPAA, had expressly clarified that HIPAA does not preclude P&A access to otherwise confidential records. *Id.* at 1216-18. Defendants have apparently abandoned this objection, since they eventually provided the names and contact information for six patients, while still refusing to provide information on additional patients.

Defendants also proposed to contact the affected patients themselves and ask if they wished to speak to DRC staff, as an alternative to disclosure of directory information. State court complaint, ¶ 15, Ex. E to Bird Decl.  DRC cannot accept such a proposal, since it would impair the ability of the P&A system to communicate confidentially with clients and witnesses.  In *Mississippi Protection and Advocacy System, Inc. v. Cotten*, the defendants also offered to contact the individuals with disabilities and ask if they wanted to speak with the P&A.  929 F.2d at 1056.  The Court of Appeals held that such a restriction would chill the ability of the P&A to meet its statutory duties.  *Id.* at 1059.

Plaintiff DRC is likely to prevail on the merits of its access claim because the information requested is essential to its investigation and well within the scope of its finding of probable cause regarding abuse or neglect.

19

**B.      Plaintiff DRC Suffers Irreparable Injury and Will Continue to Do So Unless the Court Grants the Motion for Preliminary Injunction.**

The second criterion weighed by courts in issuing a preliminary injunction is irreparable injury.  Multiple courts found irreparable injury to a P&A when agencies and facilities refuse to produce records or refuse access to witnesses needed to pursue an abuse or neglect investigation.  "Courts have concluded that a P&A system's inability to meet its federal statutory mandate to protect and advocate for the rights of individuals with disabilities is an irreparable harm for purposes of injunctive relief."  *Conn. Office of Protection and Advocacy v. Hartford Bd. Of Education,* 464 F.3d at 234.

> There can be no dispute that [the P&A] will be irreparably harmed if it is 'prevented from pursuing fully its right to access records ... in pursuit of its duty to investigate circumstances providing probable cause to believe abuse or neglect may be occurring.'

*Armstrong,* 266 F. Supp. 2d at 311 (issuing permanent injunction, citations omitted). *Accord, Gerard Treatment Programs,* 152 F. Supp. 2d at 1173 (P&A is "irreparably harmed by being prevented from pursuing fully its right to access records and patients."); *Ohio Legal Rights Services v. Buckeye Ranch, Inc.,* 365 F. Supp. 2d at 883 (same); *Iowa Protection and Advocacy Services, Inc. v. Rasmussen*, 206 F.R.D. at 635 (same).  One district court found that:

> [T]he defendant's refusal to provide [the P&A] with records that it is entitled to review (indeed, charged to review as part of its responsibilities) does in a very real and readily identifiable way, pose a threat to the plaintiff's being able to discharge its obligations.  And no amount of damages will remedy that sustained harm.

*Wisconsin Coalition for Advocacy,* 131 F. Supp. 2d at 1051.

Here, Defendants are preventing DRC from fully investigating evidence of abuse and neglect of County patients because of the denial of access to potential victims and witnesses – those who were involuntarily detained for more than 24 hours.  DRC has an urgent need to interview these patients, confirm whether they were denied mental health treatment as reports allege, review their records, and take any other appropriate steps. DRC has expended significant time and resources in responding to Defendants' excuses

20

and delay.  With every week that passes, the potential witnesses will become more difficult to locate and their reports may become stale, further inhibiting DRC's investigation.  Most importantly, new County patients whom DRC is mandated to serve will continue to be held without treatment and due process, much to their detriment.  DRC, and its constituents, have suffered and continue to suffer irreparable injury.

### C.     The Balance of Hardships Favors DRC.

#### 1.     Defendants Will Suffer No Harm from An Injunction.

"Courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Winter,* 555 U.S. at 24 (*quoting Amoco Production Co.,* 480 U.S. 531, 542 (1987)).

Here, Defendants will suffer no harm, since they have no objection to production of the requested information other than their insistence on a prior court order.  Ex. E to Bird Decl. (State court complaint ¶ 21) ("[T]he County does not object to the production subject to Court order.").  If the Court grants DRC's Motion for a Preliminary Injunction, Defendants will merely be required to do that which the law already requires.  *Wisconsin Coalition for Advocacy,* 131 F. Supp. 2d at 1052; *Gerard Treatment Programs,* 152 F. Supp. 2d at 1174; *Stalder,* 128 F. Supp. 2d at 368.

Further, Defendants can claim no interest in avoiding investigations of harm or injury to a person with a disability. "Indeed, one would suppose that a facility's legitimate interests are served when abuse and neglect are uncovered and can be corrected." *J.S. Tarwater Developmental Ctr.*, 97 F.3d at 499. If patients are actually provided with the treatment to which they are entitled, DRC's interviews will vindicate the County (although this is highly unlikely given the nature and credibility of the evidence presented).  If DRC's interviews confirm the allegations, the County presumably has an interest in rectifying the abuse and avoiding further mistreatment and related liability.  *See, e.g., Gerard Treatment Programs,* 152 F. Supp. 2d at 1174-75 (noting that the interests of a service provider in "forestalling an investigation border on the nonexistent").

---

*DRC v. COUNTY OF SAN BENITO*; Case No. 19-cv-01833 VKD
MEMO OF POINTS & AUTHORITIES ISO MOT. RE: PRELIM. INJUNCTION

1    Nor will Defendants face the risk of liability if they release confidential information

2  such as names and contact information to DRC without a court order.  P&A systems,

3  because of their "special function ... to serve individuals with disabilities or mental

4  illness," are "under an especially significant duty of confidentiality."  *Disability Rights*

5  *Wisconsin,* 463 F.3d at 728. *Accord, Freudenthal,* 412 F. Supp. 2d at 1215-16; *Hartford*

6  *Bd. of Educ.,* 355 F. Supp. 2d at 663–64; *Stalder,* 128 F. Supp. 2d at 366; *Ala. Disabilities*

7  *Advocacy Prog.,* 97 F.3d at 497, 499.  Under 42 U.S.C. § 10806(a), DRC is subject to the

8  same strictures of confidentiality as the County itself.  In addition, Defendants have

9  abandoned any privacy objections by providing the names and contact information for six

10  patients subject to sequential or "serial" holds.

11           **2.      DRC's Abuse Investigation will be Frustrated in the Absence of**

12                  **an Injunction.**

13    Although granting an injunction will work no hardship on Defendants, denying an

14  injunction will work great hardship on DRC, as described above regarding irreparable

15  harm.  If Defendant County is permitted to disregard DRC's legitimate authority to obtain

16  the records and access to individuals it needs to conduct this investigation, DRC will be

17  irreparably harmed in ways reaching far beyond this case.  Other counties and facilities

18  may follow suit, and DRC's ability to carry out future investigations of abuse and neglect

19  will be severely compromised.  DRC will be unable to carry out its statutory obligation to

20  provide effective protection and advocacy services to individuals with disabilities.

21    Thus, Defendants' refusal to allow DRC access to the names of witnesses does, in a

22  real and readily identifiable way, pose a threat to DRC's ability to discharge its statutorily

23  mandated obligations, both in this case and beyond.  Congress intended that California,

24  like other states, have an "effective" P&A agency, not simply a *pro forma* organization

25  that has the theoretical power to investigate cases of possible neglect but no effective way

26  to carry out those investigations.  *Cotten,* 929 F.2d at 1058.  DRC's investigation into

27  abuse and neglect of San Benito County patients will be frustrated, and people with

28  psychiatric disabilities will continue to suffer injury and harm from the denial of treatment,

1  extended isolation at the hospital, and denials of due process.  DRC's overall purpose –

2  advocacy on behalf of people with disabilities – will also be frustrated if it must initiate

3  litigation with every county before it can investigate serious allegations of abuse and

4  neglect.  In sum, the hardship to DRC outweighs that to Defendants.

5      **D.      The Public Interest Will be Advanced by the Grant of Preliminary**

6          **Relief.**

7          The fourth criterion weighed by courts in determining whether to grant a

8  preliminary injunction is whether the public interest will be advanced.  In determining the

9  public interests that are relevant to a motion for a preliminary injunction, Congressional

10 statements about the public interest should be considered. *See* 11A Charles A. Wright,

11 Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2948.4 ("The public

12 interest may be declared in the form of a statute.").  In the PAIMI Act, Congress made an

13 explicit finding that existing systems "for monitoring compliance with respect to the rights

14 of individuals with mental illness . . . are frequently inadequate." 42 U.S.C. § 10801.

15 Congress created the P & A system, funded it, and granted it broad access authority

16 because individuals with disabilities are "vulnerable to abuse, injury, and neglect."

17 *Pennsylvania Prot. & Advocacy, Inc. v. Houstoun,* 228 F.3d 423, 427 (3d Cir. 2000).

18 These Congressional statements reflect a public interest in ensuring that P&A systems are

19 effective, which requires access to the records and individuals DRC requires to conduct a

20 full investigation into abuse and neglect of individuals with mental illness.

21         In addition, County patients have an interest in being free from abuse, neglect and

22 unlawful seclusion when they are held involuntarily in medical facilities under

23 Defendants' authority.  42 U.S.C. § 1396r(c)(1)(A)(ii); Cal. Welf. & Inst. Code

24 § 5325.1(c).  This interest weighs heavily in favor of issuing a preliminary injunction to

25 compel Defendants to provide Plaintiff DRC's access to witnesses and victims.

26 **II.     PLAINTIFF SHOULD NOT BE REQUIRED TO POST BOND.**

27         The Court should also exercise its discretion and not require the posting of a bond

28 where, as here, an injunction is sought by a non-profit agency that operates in the public

1  interest and where the likelihood of success is great.  *People of State of Cal. ex rel. Van De*

2  *Kamp v. Tahoe Reg'l Planning Agency*, 766 F.2d 1319, 1325–26 (9th Cir.), amended, 775

3  F.2d 998 (9th Cir. 1985).  "Moreover, special precautions to ensure access to the courts

4  must be taken where Congress has provided for private enforcement of a statute." Id.

5  (citation omitted).  A preliminary injunction will impose no financial hardship on

6  Defendants.  *See, Disability Rights Ohio v. Buckeye Ranch, Inc.,* 2019 WL 1369400 ("The

7  equitable circumstances of the present case support a conclusion that that the posting of a

8  bond is not warranted.")

9  **CONCLUSION**

10  For all of the above reasons, Plaintiffs respectfully request that this Court issue a

11  preliminary injunction granting DRC access to the names and contact information of

12  individuals held involuntarily by Defendants at Hazel Hawkins Hospital for more than

13  twenty-four hours pursuant to Welf. & Inst. Code § 5150, in order that DRC may fulfill its

14  statutory mandates under federal and state law.  Plaintiffs also request that the Court waive

15  any requirement for posting bond.

16  Respectfully Submitted,

17  Dated:  April 8, 2019                DISABILITY RIGHTS CALIFORNIA

18

19  _____*/s/  Melinda Bird*_____

20  Melinda Bird

21

22

23

24

25

26

27

28

*DRC v. COUNTY OF SAN BENITO*; Case No. 19-cv-01833 VKD
MEMO OF POINTS & AUTHORITIES ISO MOT. RE: PRELIM. INJUNCTION